*274 OPINION.
Smith:
Section 200 of the Revenue Act of 1918, so far as is material to the disposition of the case above, defines personal service corporation as follows:
The term “ personal service corporation ” means a corporation whose income is to be ascribed primarily to the activities of the principal owners or stockholders who are themselves regularly engaged in the active conduct of the affairs of the corporation and in which capital (whether invested or borrowed) is not a material income-producing factor; * * *.
In claiming the benefit of an exception to the general method and extent of taxing corporations, the burden is upon the petitioner to show that it clearly comes within the term of such exception. Hubbard-Ragsdale Co. v. Dean, 15 Fed. (2d) 410. We are of the opinion that the petitioner has not satisfied the first requirement of a personal service corporation, namely, that its income is to be “ ascribed primarily to the activities of the principal owners or stockholders.” The petitioner was the successor of two insurance agency businesses which had done a profitable business. The capital stock of the petitioner was all issued for such good will. We are of opinion that much of the income of the petitioner was attributable to that good will. The major portion of the income of the petitioner *275 was from renewals of policies written prior to 1918. Witnesses for the petitioner testified that they seldom lost clients. It appears that the stockholders of the petitioner watched the renewal business, but the evidence does not show that the renewal business was ascribable primarily to their activities. Furthermore, it appears that the major portion of the income of the petitioner was from business which came to it through other brokers. More than one-half of its commissions came from that source. Of course, it was necessary that the stockholder officers of the petitioner be on friendly relations with those other brokers, but it does not appear that personal services were primarily responsible for this business. See Appeals of Joseph Emsheimer Insurance Agency, 1 B. T. A., 649; W. J. Perry Corporation., 1 B. T. A. 788; Thos. J. Baker, Jr., & Co., 2 B. T. A. 13; Harry S. Kaufman, Ltd., 2 B. T. A. 177; Hurst, Anthony & Watkins, 3 B. T. A. 53; Houseal-Simons Agency, Inc., 3 B. T. A. 370; Conklin-Zonne-Harrison Agency, Inc., 3 B. T. A. 544.
We are not satisfied by the evidence that capital was not a material income-producing factor in earning the income For the year 1918 the petitioner had a net income, after the deduction of officers’ salaries in the amount of $49,000, of $46,829.36. It was testified that the average commission earned by the petitioner upon its premium income for 1918 was approximately 11 per cent. If this held true with respect to the uncollected premiums at December 31, 1918, the commission upon those premiums was $29,204.53. This amount deducted from the total trade accounts receivable at the close of the year would leave $236,291.21 as the portion of the accounts receivable payable to the insurance companies in respect of those premiums. The amount owed to the insurance companies at the close of the year was, however, only $207,250.42, which would indicate that the petitioner was financing its clients to the extent of $29,040.79 at the close of the year. It is furthermore to be noted that although the petitioner had a large net income for the year 1918, nevertheless it found it necessary to borrow $35,000 at the close of 1918 in order to finance its commitments as of the close of the year. The cash on hand at December 31, 1918, was only $13,037.98. We are of the opinion that it has not been shown that capital was not a material income-producing factor for the year 1918.

Judgment will he entered for the respondent.

Philmi’S and Trammell concur in the result.